**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly Robertson, | No. CV-23-02132-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Kimberly Robertson's appeal from the Commissioner of the Social Security Administration's ("SSA") final decision denying social security disability benefits. (Doc. 1). The appeal is fully briefed (Docs. 12, 20, 21), and the Court now rules.

**I.    BACKGROUND**

The issues presented in this appeal are:

  1. Whether the ALJ erred in discounting Plaintiff's subjective symptom testimony.

  2. Whether the ALJ erred in discounting the assessments of Dr. Carlise and Dr. Rabara. (*See* Doc. 12 at 2).[1]

**A.    Factual Overview**

Plaintiff was thirty-eight years old on her alleged disability onset date of January 2, 2009. (Doc. 12 at 2). She completed her high school education and reports past work as an industrial cleaner. (*Id.* at 3). On November 5, 2020, Plaintiff filed her applications for a

---

[1] The Court has reordered Plaintiff's issues to facilitate its analysis.

period of disability benefits and supplemental security income. (Doc. 8-3 at 23). Plaintiff alleged that she suffered from asthma, an intellectual disorder, adjustment disorder with anxiety, an upper respiratory infection, a right heel spur, right foot gout, a rotator cuff injury, right knee tendinitis and obesity. (*Id.* at 26). Plaintiff's claims were denied initially on May 17, 2021, and upon reconsideration on August 12, 2021. (*Id.* at 23). Plaintiff filed a written request to be heard by an Administrative Law Judge ("ALJ"), which was granted, and Plaintiff participated in a telephonic hearing on October 11, 2022. (*Id.*) The ALJ issued an unfavorable decision on October 25, 2022. (*Id.* at 35). In his decision, the ALJ found that based on Plaintiff's November 5, 2020, social security application, Plaintiff has not been disabled—as defined in the Social Security Act—from January 2, 2009, through the date of the decision. (*Id.* at 34). The SSA Appeals Council denied review of the ALJ's decision and thereby adopted it as the SSA's final decision. (Doc. 20 at 2). Plaintiff then sought review in this Court. (Doc. 1).

### B. The SSA's Five-Step Evaluation Process

To qualify for social security disability insurance benefits, a claimant must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At step one, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," e.g., doing "significant physical or mental activities;" and (2) "gainful," e.g., usually done "for pay or profit." 20 C.F.R. § 416.972(a)(b). If the claimant is engaging

in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At step three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to step four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is her ability to do physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At step four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to step five in the sequential evaluation process.

At step five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If

the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### C. The ALJ's Application of the Factors

Here, at step one, the ALJ concluded that Plaintiff "has not engaged in in substantial gainful activity since January 2, 2009, the alleged onset date." (Doc. 8-3 at 25).

At step two, the ALJ determined that the following impairments were "severe": asthma, an intellectual disorder, adjustment disorder with anxiety. (*Id.* at 26). The ALJ found that Plaintiff's impairments "constitute more than slight abnormalities and have had more than a minimal effect on the claimant's ability to perform basic work activities for a continuous period of 12 months as required by SSR 85-28." (*Id.*) The ALJ found the following impairments were non-severe: an upper respiratory infection, a right heel spur, right foot gout, a rotator cuff injury, right knee tendinitis, and obesity. (*Id.*) The ALJ found them non-severe because "they do not significantly limit the claimant's physical or mental ability to do basic work activities for a continuous period of 12 months." (*Id.* at 27). The ALJ analyzed Plaintiff's claimed mental impairment under the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders. The ALJ found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.05 and 12.06." (*Id.* at 28).

At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 27). The ALJ determined that Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c) except Plaintiff is limited to simple, routine and repetitive tasks. (*Id.* at 30).

At step four, the ALJ determined that Plaintiff is capable of performing past relevant work as an industrial cleaner, reasoning that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functioning capacity." (*Id.* at 34). Accordingly, the ALJ found that Plaintiff has not been under a disability—as defined in the Social Security Act—from January 2, 2009, through the date of the decision.

(*Id.*)

## II. LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

### A. Plaintiff's Symptom Testimony

First, Plaintiff argues that "[t]he ALJ's adverse assessment of Plaintiff's subjective symptom testimony was not supported by clear and convincing evidence." (Doc. 12 at 19).

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of her symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying

impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)); *Lingenfelter*, 504 F.3d at 1036. An adverse credibility finding is sufficiently specific if the ALJ identifies "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

To assess credibility, the ALJ may consider, among other factors, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim*, 763 F.3d at 1163 (citation omitted). If the ALJ relies on these factors, and her reliance is supported by substantial evidence, the Court "may not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

Plaintiff testified to the following symptoms[2]:

> Regarding asthma, the claimant treats with inhalers and prednisone (Ex. 1F/2, 6F/2). She has treated in the emergency room for exacerbation of her symptoms; however, it appears these were related to a lack of medication

---

[2] This quote also includes some of the ALJ's analysis of Plaintiff's symptoms and will be referred to when the Court addresses the ALJ's reasoning for discrediting Plaintiff's symptom testimony.

- 6 -

or upper respiratory infections (Ex. 2F/22, 2F/36-37, 6F/1). Physical examinations have consistently revealed that her lungs are clear to auscultation and her respirations are non-labored (Ex. 2F/7, 2F/23, 3F/1, 6F/1). At the hearing, the claimant testified that she has no physical problems affecting her ability to work (hearing testimony). Any limitations associated with the claimant's asthma, have been taken into consideration in the residual functional capacity. Regarding the claimant's mental impairments, she reported suffering from brain damage as a child (Ex. 8F/1). She also reported having dyslexia and anxiety, with associated symptoms of fatigue, nervousness, worry, feeling overwhelmed and low frustration tolerance (Ex. 3F/4, 8F/1-2, 7F/1). She has a history of receiving special education during high school but was able to graduate in 1989. She also reported some difficulty with memory (Ex. 8F/2). In June 2012, the claimant underwent a Vocational Rehabilitation Evaluation with Charles Carlise, Ed.D. (Ex. 1F). Her full-scale IQ score fell in the extremely low range of intellectual ability (Ex. 1F/3). Her academic skills in reading were in the first percentile or less; math calculations were at the less than 0.1 percentile; and spelling was at the fourth percentile. Her memory scores also fell in the "extremely low" range (Ex. 1F/3). However, her "general functioning appear[ed] better than her measured skills and abilities for other reasons" (Ex. 1F/6). Dr. Carlise recommended that the claimant participate in a structured work adjustment program (Ex. 1F/7). In July 2022, the claimant underwent a consultative evaluation with Michael D. Rabara, Psy.D. and WAIS IV testing revealed that her full-scale IQ score fell in the "extremely low" range (Ex. 8F/5). Dr. Rabara noted that the claimant's cognitive skills were genuinely limited; however, her functional skills were better than expected for her test scores (Ex. 8F/6). She has held jobs, can perform all personal hygiene tasks, can use public transportation, manage a checking account, shop, cook, manage her medical care and perform routine household chores (Ex. 3F/4, 8F/6, hearing testimony). The record further reflects that the claimant treated her anxiety with psychotropic medication, with reported improvement to her symptoms (Ex. 3F/1, 5F/6, 6F/1). Though she was observed as anxious, at times, she was consistently observed as cooperative, pleasant and polite, alert and oriented, with appropriate mood and affect, logical and goal directed thought processes, appropriate hygiene, good eye contact and intact memory (Ex. 2F/7, 2F/19, 3F/1, 5F/6-7, 5F/9-10, 6F/1, 7F/1-2, 7F/4-5, 7F/7-8, 9F/1-2, 9F/4-5). Any limitations associated with the claimant's mental impairments have been taken into consideration in the residual functional capacity.

(Doc. 8-3 at 31–32).

First, the ALJ found that Plaintiff was not malingering. (*Id.*) The ALJ then found that Plaintiff had impairments that resulted in "certain limitations," he did not fully credit

Plaintiff's statements concerning the severity of the impairments and symptoms alleged. (*Id.* at 31). Because the ALJ did not find that Plaintiff was malingering, the Court must determine whether the ALJ gave specific, clear, and convincing reasons for partly discrediting Plaintiff's symptom testimony. It should be noted that the ALJ credited some of Plaintiff's symptoms and accounted for them by mentioning each symptom and the corresponding limitations and then connecting it to specific portions of the more limited RFC. (*See id.*)

> As for Plaintiff's alleged physical symptoms, the ALJ stated:
>
> While the medical records detail symptoms resulting in certain limitations, the objective medical records fail to support the severity of impairments and symptoms alleged, but correspond with the given residual function capacity herein. Regarding asthma, the claimant treats with inhalers and prednisone (Ex. 1F/2, 6F/2). She has treated in the emergency room for exacerbation of her symptoms; however, it appears these were related to a lack of medication or upper respiratory infections (Ex. 2F/22, 2F/36-37, 6F/1). Physical examinations have consistently revealed that her lungs are clear to auscultation and her respirations are non-labored (Ex. 2F/7, 2F/23, 3F/1, 6F/1). At the hearing, the claimant testified that she has no physical problems affecting her ability to work (hearing testimony). Any limitations associated with the claimant's asthma, have been taken into consideration in the residual functional capacity.

(Doc. 8-3 at 31). As for Plaintiff's asthma, the ALJ's pointing to the improvement of Plaintiff's condition with treatment constitutes a clear and convincing reason to partially discount Plaintiff's testimony. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that evidence of effective treatment is sufficient to discount Plaintiff's testimony regarding symptom severity)); *see also Singh v. Comm'r of Soc. Sec. Admin.*, No. CV-19-02315-PHX-MTM, 2020 WL 5757620, at *2–3 (D. Ariz. Sept. 28, 2020) (affirming the ALJ's discounting of Plaintiff's testimony, in part, because Plaintiff's conditions improved with treatment). Additionally, Plaintiff conceded at her hearing that she did not have "[a[ny physical problems that would affect [her] ability to work." (Doc. 8-3 at 47). This statement taken alone contradicts Plaintiff's assertion that any physical limitations she suffers preclude her

from work. The ALJ made specific findings supported by clear and convincing reasons to discredit Plaintiff's physical symptom testimony.

As for rejecting Plaintiff's claimed mental impairment symptoms, the ALJ gave the following reasoning along with the reasoning mentioned prior in this Order:

> The undersigned evaluated the claimant's alleged symptoms and considered their possible effect on the claimant's ability to work and ability to perform activities of daily living. Social Security Ruling (SSR) 16-3p provides important guidance on evaluating symptoms in adult and child disability claims. The undersigned has taken into consideration the claimant's reported brain damage as a child (Ex. 8F/1). She also reported having dyslexia and anxiety, with associated symptoms of fatigue, nervousness, worry, feeling overwhelmed and low frustration tolerance (Ex. 3F/4, 8F/1-2, 7F/1). She has also reported difficulty breathing due to asthma exacerbations (2F/22, 2F/36-37, 6F/1). The claimant's mother also assisted the claimant with completing a function report, and noted her own observations of the claimant's difficulty with functioning (Ex. 7E). Despite the claimant's allegations, she has reported on multiple occasions that she is able to function on a daily basis. She has held jobs, can perform all personal hygiene tasks, can use public transportation, manage a checking account, shop, cook, manage her medical care and perform routine household chores (Ex. 3F/4, 8F/6, hearing testimony). Her mental status examinations have been largely normal (Ex. 2F/7, 2F/19, 3F/1, 5F/6-7, 5F/9-10, 6F/1, 7F/1-2, 7F/4-5, 7F/7-8, 9F/1-2, 9F/4-5), and her physical examinations have been largely normal (Ex. 2F/7, 2F/23, 3F/1, 6F/1). Given that the claimant's reported symptoms are inconsistent with his [sic] physical examinations (Ex.), [sic] the undersigned finds that these symptoms are not as limiting as alleged.

(Doc. 8-3 at 32). As for the ALJ's finding that Plaintiff's daily activities contradict her alleged symptoms, Plaintiff claims that "the ALJ failed to explain or provide specific reasons why these daily activities were inconsistent with Plaintiff's significant cognitive problems, anxiety, and difficulty socializing with anyone aside from her husband." (Doc. 12 at 20). While a claimant need not "vegetate in a dark room" to be eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (quotation omitted), daily activities undertaken by the claimant can be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment, even when those activities suggest some difficulty functioning. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010). The ALJ pointed to the fact that Plaintiff's anxiety improved

1    with treatment—another acceptably specific reason for discounting a plaintiff's symptom
2    testimony, *Astrue*, 481 F.3d at 751—to the point where she felt that her anxiety was under
3    control. (Doc. 8-3 at 47). Thus, the Court finds that even though Plaintiff stated that she
4    had difficulty functioning, the ALJ properly discounted her credibility to the extent that
5    her daily activities were inconsistent with an inability to work in any capacity. *See, e.g.*,
6    *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability
7    to "take care of her personal needs, prepare easy meals, do light housework and shop for
8    some groceries . . . may be seen as inconsistent with the presence of a condition which
9    would preclude all work activity." (citations omitted)). Accordingly, the Court finds that
10   the ALJ made specific findings supported by clear and convincing reasons to partially
11   discount Plaintiff's subjective symptom testimony, and the ALJ supported these reasons
12   with substantial evidence.

13        **B.**    **Medical Opinions**

14   Second, Plaintiff argues that the ALJ erred by rejecting the assessments from Dr.
15   Carlise and Dr. Rabara and his rejection was not based on substantial evidence. (Doc. 12
16   at 12-19).

17   As of March 27, 2017, the SSA modified the rules for evaluating opinion evidence.
18   *See* 20 C.F.R. § 404.1520c. According to the new regulations, the ALJ should "not defer
19   or give any specific evidentiary weight, including controlling weight, to any medical
20   opinion(s) or prior administrative medical finding(s)." *Id.* § 404.1520c(a). Instead, the ALJ
21   considers the following factors when considering a particular medical opinion in a case:
22   (1) supportability; (2) consistency; (3) relationship with the claimant, which includes
23   length of the treatment relationship, frequency of examinations, purpose of the treatment
24   relationship, extent of the treatment relationship, and examining relationship; (4)
25   specialization; and (5) other factors. *Id.* § 404.1520c(c)(1)–(5). The most important of these
26   factors are supportability and consistency. *Id.* § 404.1520c(a). The ALJ should "explain
27   how [the ALJ] considered the supportability and consistency factors for a medical source's
28   medical opinion or prior administrative medical findings in [a] determination or decision."

1  *Id.* § 404.1520c(b)(2). An ALJ will "articulate how [he or she] considered the medical
2  opinions" and "how persuasive [the ALJ] find[s] all of the medical opinions." *Id.*
3  § 404.1520c(a) and (b)(1).

4  Regarding the "supportability" factor, the new regulations explain that the "more
5  relevant the objective medical evidence and supporting explanations presented by a
6  medical source are to support his or her medical opinion(s), . . . the more persuasive the
7  medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding the "consistency" factor,
8  the "more consistent a medical opinion(s) . . . is with the evidence from other medical
9  sources and nonmedical sources in the claim, the more persuasive the medical
10 opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

    **i.**  **Dr. Carlise**

Plaintiff first argues that the ALJ erred by finding Plaintiff was limited to simple routine and repetitive tasks based on her IQ scores and anxiety symptoms. (Doc. 12 at 12). Further, Plaintiff asserts that the ALJ erred by rejecting Dr. Carlise's opinion because it was not consistent with Plaintiff's activities of daily living. (*Id.*) Defendant responds that the ALJ supported his rejection of part of Dr. Carlise's opinion by properly finding that Dr. Carlise's limitations were not supported by his own observations, and they were not consistent with the rest of the record. (Doc. 20 at 6–7).

> The ALJ conducted the following analysis pertaining to Dr. Carlise's opinion:
>
> Charles Carlise, Ed.D. conducted a Vocational Rehabilitation Evaluation and opined of functional limitations in the following areas: interpersonal, mobility, self-care, self-direction and work skills (Ex. 1F/7). The treatment notes support limitations consistent with the residual functional capacity. Limiting the claimant to simple, routine and repetitive tasks is supported given the claimant's "extremely low" range IQ scores (Ex. 1F/3, 8F/5), in addition to anxiety symptoms (Ex. 3F/4, 8F/1-2, 7F/1). However, increased limitations are not supported given that the claimant's "general functioning appears better than her measured skills and abilities for other reasons." (Ex. 1F/6). The claimant has held jobs, can perform all personal hygiene tasks, can use public transportation, manage a checking account, shop, cook, manage her medical care and perform routine household chores (Ex. 3F/4, 8F/6, hearing testimony). Her mental status examinations were also largely

> normal (Ex. 2F/7, 2F/19, 3F/1, 5F/6-7, 5F/9-10, 6F/1, 7F/1-2, 7F/4-5, 7F/7-8, 9F/1-2, 9F/4-5). Dr. Carlise's opinion does opine of limitations; however, his opinion is not entirely consistent with the evidence as a whole. For the preceding reasons, the undersigned finds this opinion is persuasive only to the extent it is consistent with the residual functional capacity.

(Doc. 8-3 at 33).

Contrary to Plaintiff's assertions that the ALJ failed to conduct a proper consistency and supportability analysis, the ALJ took Dr. Carlise's observations and crafted a consistent RFC. *See Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) ("ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work"); *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating clinical findings into a succinct RFC"). Dr. Carlise's observation that Plaintiff is not mobile is belied by the record and Plaintiff's testimony that she can use public transportation. Any restrictions in self-care are also contradicted by Plaintiff's testimony about her ability to care for herself. Further, Dr. Carlise's opinion that Plaintiff has interpersonal impairments is also inconsistent with her daily activities and general demeanor observed by Dr. Carlise.

Defendant is correct that Dr. Carlise did not give a specific degree of limitations and stated that Plaintiff's work limitation was focused on an inability to remember and understand directions or process information effectively. (AR at 404). The RFC accounted for this limitation by limiting Plaintiff to simple, routine, repetitive tasks. Dr. Carlise's opinion never states Plaintiff could not perform jobs that are limited to simple, routine, and repetitive tasks. Plaintiff argues that the ALJ erred in reading Dr. Carlise's report because a plain reading would indicate that Plaintiff cannot perform simple, routine, and repetitive tasks. (Doc. 21 at 3). However, the ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and *drawing logical inferences from the medical record*. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). The Court finds that the ALJ adequately

incorporated the opinion of Dr. Carlise into the RFC and supported his analysis with substantial evidence. For any portion of Dr. Carlise's opinion that the ALJ rejected, the ALJ conducted a proper supportability and consistency analysis.

### ii. Dr. Rabara

Plaintiff next argues that the ALJ erred in his discounting of Dr. Rabara's opinion. (Doc. 12 at 18). He states "[f]or the same reasons argued supra with respect to Dr. Carlise's opinion the ALJ also erred in his analysis of Dr. Rabara's opinion." (*Id.*) Defendant responds that "Dr. Rabara had reviewed Dr. Carlie's evaluation and opinion, and did not agree that Plaintiff required a structured work environment. . . . substantial evidence, including Dr. Rabara's opinion, and other evidence, such as the ability to hold down jobs in the interim ten years between [the two doctors'] evaluations, supports the ALJ's RFC finding." (Doc. 20 at 9–10).

The ALJ conducted the following analysis pertaining to Dr. Rabara's opinion:

> Michael Rabara, Psy.D. conducted a psychological consultative examination and opined the claimant had mild limitations in her ability to understand and remember simple instructions, as well as carry out simple instructions. She has no limitation in her ability to interact appropriately with the public, supervisors or co-workers. She has a moderate limitation in her ability to respond appropriately to usual work situations and changes in a routine work setting. She has a moderate limitation in her ability to make judgements on simple work-related decisions. She has marked limitations in her ability to understand and remember complex instructions, carry out complex instructions, as well as make judgements on complex work-related decisions (Ex. 8F/7-9). She is not able to manage benefits in her own best interest (Ex. 8F/10). The treatment notes support limitations consistent with the residual functional capacity. Limiting the claimant to simple, routine and repetitive tasks is supported given the claimant's "extremely low" range IQ scores (Ex. 1F/3, 8F/5), in addition to anxiety symptoms (Ex. 3F/4, 8F/1-2, 7F/1). However, increased limitations are not supported given that the claimant's "general functioning appears better than her measured skills and abilities for other reasons." (Ex. 1F/6). The claimant has held jobs, can perform all personal hygiene tasks, can use public transportation, manage a checking account, shop, cook, manage her medical care and perform routine household chores (Ex. 3F/4, 8F/6, hearing testimony). Her mental status examinations were also largely normal (Ex. 2F/7, 2F/19, 3F/1, 5F/6-7, 5F/9-10, 6F/1, 7F/1-2, 7F/4-5, 7F/7-8, 9F/1-2, 9F/4-5). Dr. Rabara's opinion is fairly consistent

with the evidence as a whole. For the preceding reasons, the undersigned finds this opinion is persuasive only to the extent it is consistent with the residual functional capacity.

(Doc. 8-3 at 33–34).

Again, contrary to Plaintiff's assertions, the ALJ properly considered the opinion of Dr. Rabara. Dr. Rabara did not set out specific limitations. (*See* AR 532–37). Thus, it was the duty of the ALJ to take the observations of Dr. Rabara and consider them when crafting an appropriate RFC. *See Farlow*, 53 F.4th at 488; *Rounds*, 807 F.3d at 1006. Dr. Rabara agreed with Dr. Carlise when stating "consistent with her 6/7/2012 evaluation, her functional skills are better than expected for her test scores." (AR at 537). Again, Plaintiff's reports of her daily activities are inconsistent with any increased limitations beyond that of the RFC, and the ALJ did not err in discounting the opinion of Dr. Rabara to the extent that it could be interpreted to be a higher limitation. The Court finds that the ALJ properly evaluated the opinion of Dr. Rabara and supported his analysis with substantial evidence.

## IV.     CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

Dated this 23rd day of August, 2024.

James A. Teilborg
Senior United States District Judge